Nelson, J.,
delivered the opinion of the Court.
At the instance of Robert Matthews, guardian of the minor children, and Rebecca Matthews, admininistratrix of the estate, of Andrew Matthews, deceased, the land and slaves belonging to his estate were sold, pursuant to a decree pronounced by the Chancery Court at Shelby ville, at its September Term, 1859. Under said decree, nineteen slaves, who had been held by the intestate as trustee for three of his minor children, were also sold. "William J., AVhitthorne, Clerk and Master of the Court, was appointed commissioner to sell the lands, and Robert Matthews, the guardian, was appointed commissioner to sell the slaves. The commissioners made their reports of sales, which were duly confirmed by a decree of said Court, pronounced 10th of May, 1860, when a further order was made, directing a sale of part of the real estate and four slaves, who had not been sold. The notes for the sale of the slaves amounted to $20,669.50. At the March Term, 1861, a report and petition were presented by said Robert Matthews to said Chancery Court, in which he prayed that, “in consideration of the *590 monetary crisis, and the stay laws passed at the late called session of the Legislature,” he might be authorized to extend the time of payment of the sale notes until the 25th of August, 1861, or such other time as might be directed, by taking further security; and it was ordered by the Court, “that Robert Matthews shall have leave, and he is hereby empowered to renew all the notes mentioned in said report. * * That the same relative position which the parties now occupy to the Court and to the commissioners aforesaid, shall be, and still remain in all such renewals of said notes mentioned in the report aforesaid; and that said Robert Matthews, as commissioner aforesaid, shall have discretionary power to contract with the said parties, and to renew the same up to the time mentioned in the petition and report; and that they shall all remain before the Court in the same position as to the rights of the commissioner aforesaid, that said makers and secui’ities now occupy before this honorable Court.”
The proceedings in the Chancery Court appear to have slumbered until March, 1865, when, upon the petition of the minors by their next friend, Rebecca Matthews, and of the said Rebecca as administratrix, representing that the said Robert Matthews had collected and failed to pay over the fund, a decree was rendered against him for $26,153.10, and the costs of the motion. An execution was issued upon this decree, on the 1st of May, 1865; but on the 23d of June, 1865, Mrs. Matthews authorized the Sheriff, in writing, to stop all further proceedings, and return the execution not satisfied. On the 13th of September, 1865, a bill in the nature of a bill of *591 review, was filed by Robert Matthews, commissioner, and Rebecca Matthews, administratrix, against the minor heirs of Andrew Matthews, deceased, to which an amended bill was filed, 13th September, 1866, and an amended and supplemental bill on the 13th of March, 1867, under leave from the Chancellor. In these bills, the said Robert Matthews sought to be relieved of the decree obtained against him at the instance of Mrs. Rebecca Matthews, during his absence, and alleged that the various debtors, or the larger number of them, had paid their notes in Confederate money; that said payments were void, and that they should be compelled to pay the same in good funds. It appeared, in the progress of the causes, that Matthews sympathised with the rebellion, and had, perhaps, left home on account of the approach of the Federal army, and that Mrs. Matthews had filed' the bill against him to obtain a lien on the property and save the same from confiscation in the Federal Court, at Nashville; that the proceeding was not hostile in its purpose, and that when he returned, and the danger in the Federal Court had passed away, she had no desire to enforce the decree.
By leave of the Court, on the 20th of March, 1868, William H., Arthur P. and Andrew F. Matthews, filed their cross bill, to which Robert Matthews, the surviving debtors, and the personal representatives of deceased debtors, were made defendants, and in which they prayed a decree for the amount of the notes, &c.
But it is unnecessary to recite here the various demurrers, answers and interlocutory orders contained in this voluminous record, or to particularize certain par *592 tial payments made in bank notes, as tbe determination of the.cause must rest upon the questions made in behalf of and common to all the debtors and those representing them.
The Chancellor; being of opinion that Robert Matthews, having received the Confederate • Treasury notes willingly, in payment of the notes in his bands, as commissioner, was not in a situation to impeach the payments, but that the minors were entitled to relief, because there was no final decree settling the rights of the parties when Robert Matthews, the commissioner, received Confederate notes in satisfaction, and that he had no authority, as commissioner, to receive payment; pronounced a decree on the 28th of November, 1868, declaring the payments in Confederate notes illegal and invalid; directing an account, charging the said Robert Matthews with the said sum of $26,153.10, and with the sales of any other negroes not included in his report, and - with any debts lost by his negligence; and crediting him with all sums of money paid for the use and benefit of the distributees, &c.; and dismissing the amended bill filed by said Matthews. The Chancellor further decreed, that complainants in the cross bill recover of Jacob F. Thompson and his securities, $7,992; of Thompson B. Ivie and R. L., Thomas, an unpaid balance of $1,948.79; of the executors of Robert Cannon and 'William S. Jett, $4,440; and of A. L. Landis, 1,332; said sums to be subject to any credits for Confederate money paid by them, and actually used by the commissioner for the benefit of the distributees of Andrew Matthews, deceased. The costs of the cross-bill were adjudged against the de *593 fendants thereto, and of the bill of review against Robert Matthews; from which decree the defendants to the cross bill, alone, prayed and obtained an appeal to this Court.
Without tracing the shades of difference in the answers of the various defendants, it may be stated in general terms, that the recoveries against them were obtained for the amounts of principal and' interest due on notes executed by them or those they represent, to Robert Matthews, the commissioner, upon the sale of slaves, which notes, with the exception of certain partial payments in bank notes, they paid to him in Confederate Treasury notes, chiefly on the 10th of November, 1862, though one of said notes was paid as late as the 5th of December, 1862. It does not appear that there was any coercion or duress in these payments; and the questions principally discussed before us relate to the powers of the commissioner to receive payment under the decree, and the validity • of the payments as made.
1. The decree pronounced at March Term, 1861, authorizing the commissioner to renew all the notes mentioned in his report, and conferring upon him “discretionary powers to contract with the said parties, and to renew the same up to the time mentioned in the report,” necessarily implies that the notes were made payable to the commissioner; and although none of the notes are exhibited, or copies thereof contained in the record, it may be inferred from the fact that the sales were made in the Spring of 1860, before the commencement of the late civil war, and at a time when there was but a slight difference in value between current bank notes *594 and gold and silver, that the notes were originally made payable in dollars, and were so renewed. The appointment of special commissioners, and the regulation of their duties and liabilities, are, to some extent, provided for or alluded to in the Code, 329, 776, 3610, 4052. Under section 3610, they are liable, on motion, in the same way and to the same extent, as the Clerks of the Courts; and by section 4050, sub-section 5, the Clerks are authorized to receive the amount of any judgment or decree rendered in the courts of which they are Clerks, either before or after execution. Although the precise powders, duties and liabilities of special commissioners are not defined in the Code, it may be fairly presumed, from the nature of their office or trust, that the power to take notes necessarily implies the power to receive payment in satisfaction of them; and we hold that, although the commissioner may not have been required to execute a bond, because he also held the office of guardian, he had full authority to collect the amounts of 'Said notes, or to receive payment when tendered. Being a trustee, it is immaterial to consider whether he acted as commissioner or .guardian, as he would be liable in either character; and neither he nor his securities are before this Court.
2. But the question as to whether the commissioner could lawfully receive Confederate Treasury notes in payment, is of higher importance, and was, at one time, by no means free from embarrassment. The difficulties attending it have, however, in a great measure, been removed by decisions made as well by our predecessors as ourselves. There is no evidence in the record to show any fraud or collusion between Matthews and the makers *595 of tbe notes. Matthews had unbounded confidence in Confederate money, and acted in this transaction as he would have acted, according to the proof, with his own property. He risked his own judgment in receiving Confederate notes, when the contracts were made payable in dollars, and abides by it in submitting to the decree made against him personally. It does not follow that because he is liable to his wards, or to the beneficiaries of the trust fund, that payments to him, made in good faith, were of no validity as between him and the payors of the notes. Such payments, thus made, were valid, according to the strictest holding of our immediate predecessors, as executed contracts. The case of Henley v. Franklin, 3 Cold., 475, was, in several particulars, similar to this. There, the Clerk, acting as commissioner, was directed to collect the sale notes; and, having received Confederate notes in payment, on the 1st of February, 1862, and executed a receipt therefor, on his execution docket, it was held that the payment to him was a satisfaction of the debt, although it was declared that he was “responsible over, under his bond as commissioner, to the plaintiff in the motion.” While we do not hold that Confederate notes, in the quaint language of previous cases, were “an unlawful and illegal currency,” we have considered such payments, as well as those made in current bank notes, when made in good faith, valid on other grounds. See Cross v. Sells, 1 Heis., 83; Naff v. Crawford, Ib., 111, and Dietz v. Mitchell, determined at the present term.
Reverse the decree, and dismiss the bill, at complainant’s costs, as to all the' defendants who appealed.